# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BRANDON C. SOURS**, | Case No. 6:13-cv-01528-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

John E. Haapala, Jr., LAW OFFICE OF JOHN E. HAAPALA, JR., 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Carol A. Hoch, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Brandon C. Sours ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Because the

Commissioner's decision was based on the proper legal standards and supported by substantial
evidence, the decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper
legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g);
*see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means
"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*,
554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039
(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate
to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the
Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th
Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's
interpretation is a rational reading of the record, and this Court may not substitute its judgment
for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*,
359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a
whole and may not affirm simply by isolating a specific quantum of supporting evidence."
*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*,
466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may
not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see
also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. The Application

Plaintiff, Brandon Christopher Sours, was born on May 6, 1974 in Garibaldi, Oregon. Administrative Record ("AR") 26. After graduating high school in Garibaldi, Plaintiff joined the Navy. AR 335. Plaintiff served in the Navy from 1992 to 1994, and worked on a security team on board the USS George Washington. Plaintiff states that four months before to his discharge from the service he was partially crushed by a 350-pound skid that was used to carry bombs. AR 334. He adds that he left the military because of his poor health following that accident. In 2001, Plaintiff reported that he had held 23 jobs different jobs in the seven years since he left the Navy. *Id.* These jobs included work as a car salesman, independent contractor, telephone salesman, and regional manager of a business selling brushes. AR 178.

On November 7, 2000, Plaintiff filed a Title II application alleging disability as of September 22, 2000. AR 55. Plaintiff requested a hearing after the application was denied initially and upon reconsideration. On October 29, 2004, after holding a hearing, Administrative Law Judge ("ALJ") Timothy C. Terrill found Plaintiff not disabled. AR 64. Plaintiff appealed ALJ Terrill's decision to the Appeals Council and his appeal was denied. Plaintiff did not file any further appeals.

On August 13, 2010, Plaintiff filed a new Title II application, alleging his disability began on September 5, 2000.[1] AR 17, 65. Specifically, Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), spondylolisthesis, depressive disorder, irritable bowel syndrome, degenerative disc disease of the cervical spine, gastroesophageal reflux disease,

---

[1] Plaintiff alleged a disability onset date of September 5, 2000 in his current application, whereas he alleged an onset date of September 22, 2000 in the prior application. AR 18 n. 1. This fact did not change the outcome of the adjudication under review.

tinnitus, and arthritis of the knees. AR 20, 79. After his claim was denied initially and on reconsideration, Plaintiff filed a request for a hearing. ALJ Richard A. Say held a new hearing on March 21, 2012, and issued a decision on April 9, 2012, denying Plaintiff's application. AR 17-28. The Appeals Council denied Plaintiff's request for review on July 3, 2013, making ALJ Say's decision the final agency action. Plaintiff now seeks judicial review of that decision.

ALJ Say declined to reopen Plaintiff's 2004 adjudication. AR 18. Nor did the ALJ find changed circumstances as necessary to overcome the presumption of continued non-disability following an unfavorable final agency action. *Id.* Thus, the time under consideration for the current application is October 30, 2004 (the day after the previous adjudication) through December 31, 2006, which is Plaintiff's date last insured. *Id.*

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
impairment or combination of impairments is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
this impairment must have lasted or be expected to last for a continuous
period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis continues. At that point, the ALJ must
evaluate medical and other relevant evidence to assess and determine the
claimant's "residual functional capacity" ("RFC"). This is an assessment
of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

PAGE 5 – OPINION AND ORDER

Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ began his 2012 opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2006. AR 20. The ALJ then applied the sequential process. AR 20-27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from October 30, 2004, through his date last insured of December 31, 2006. *Id.* At step two, the ALJ found that Plaintiff's depressive disorder, post-traumatic stress disorder, and degenerative disc disease of the lumbar spine with radiculopathy were severe impairments.[2] *Id.*

At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ

---

[2] The ALJ also noted that the record shows Plaintiff has been treated or evaluated for other symptoms and complaints including, but not limited to: gastroesophageal reflux disease, tinnitus, and arthritis of the knees. The ALJ concluded, however, that these alleged impairments cause only transient and mild symptoms and limitations and are well-controlled with treatment or are otherwise not adequately supported by the medical evidence on the record. Therefore, according to the ALJ, these alleged impairments do not constitute severe medically determinable impairments. Plaintiff does not object to this determination.

formulated Plaintiff's RFC during the relevant time period. In determining Plaintiff's RFC, the ALJ evaluated testimony and evidence from Plaintiff, State Disability Determination Services ("DDS") examiners Dr. Dorothy Anderson, Dr. Robert Henry, Dr. Linda Jensen, and Dr. Neal Barner, and from the U.S. Department of Veterans Affairs ("VA"). The ALJ concluded that through the date last insured Plaintiff had the RFC to perform "a limited range of sedentary exertion level work" as defined in 20 C.F.R. 404.1567(c). The ALJ determined that Plaintiff could never climb ladders, ropes, or scaffolds; but he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and use foot pedals or foot controls. The ALJ concluded that Plaintiff was limited to performing unskilled work and routine tasks. AR 21.

At step four, the ALJ determined that Plaintiff's RFC rendered him unable to perform past relevant work during the insured period. At step five, based on testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform jobs as a telemarketer, credit card clerk, and as an appointment clerk, which exist in the national economy. AR 27. Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) discrediting Plaintiff's subjective complaints; (2) rejecting Plaintiff's disability rating from the VA; (3) improperly evaluating the medical evidence; and (4) improperly determining that a significant number of jobs existed in the national economy that Plaintiff could perform. Each argument is addressed in turn.

### A.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred by discrediting his symptom and limitation testimony. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective

medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation and quotation marks omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).

In weighing the claimant's credibility, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other

testimony by the claimant that appears less than candid, [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. For instance, the ALJ may consider inconsistencies either within the claimant's testimony or between the testimony and the claimant's conduct. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). Other valid considerations include "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284), and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," *Lingenfelter*, 504 F.3d at 1040. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff asserts that the following illnesses, injuries, or conditions limit his ability to work: (1) lumbar strain with spondylolisthesis with early lateral canal narrowing; (2) chronic post-traumatic stress disorder; (3) depression; (4) chronic irritable bowel syndrome; (5) urinary and bladder control problems; (6) numbness and weakness in both lower extremities; (7) bilateral knee pain; and (8) non-psychotic panic disorder. Plaintiff indicated that these illnesses, injuries, or conditions affect his ability to sit, walk, stand, sleep, and socialize with others (including his family). AR 22, 210-12. At the administrative hearing, Plaintiff testified that he cannot walk for more than short periods of time, stand, feel his lower legs, or live in the same home with his family. AR 39-40. Plaintiff also testified that his symptoms worsened from 2004 through 2006, with increasing pain in his hips, back, and lower legs. AR 22. Consequently, Plaintiff stated he was incapable of all work activity since before December 31, 2006. *Id.*

Because Plaintiff produced objective evidence that he continued to suffer during the relevant period from degenerative disc disease of the lumbar spine, an impairment that can reasonably be expected to produce pain or other symptoms, he satisfied the first step in the *Smolen* analysis. Under the second step, the ALJ was required to analyze the credibility of Plaintiff's testimony regarding the severity of his symptoms and limitations.

The ALJ found Plaintiff "is not credible, and his reports are given very little weight." AR 25. The ALJ provided several reasons for this conclusion: (1) Plaintiff was found to have exaggerated his symptoms and engaged in behavior inconsistent with his alleged symptoms; (2) Plaintiff made inconsistent statements to medical practitioners; (3) Plaintiff's alleged symptoms were inconsistent with and not supported by the medical records; (4) Plaintiff failed to seek treatment; and (5) Plaintiff did not comply with his prescribed treatment. The Court finds that in discrediting Plaintiff's testimony, the ALJ provided clear and convincing reasons that are supported by substantial evidence in the record.

### 1.    Symptom Exaggeration and Behavior Inconsistent with the Alleged Symptoms

The ALJ determined the record shows Plaintiff "has engaged in significant symptom exaggeration for secondary gain." AR 25. To support this proposition, the ALJ first points to a physical therapist report on April 27, 2001. In that report, a treating physical therapist, Ron Blehm, P.T., reported he was "concerned by the very evident inconsistencies noted during the [course] of . . . testing." AR 452-53. In addition, Mr. Blehm found Plaintiff exhibited four out of five Waddell's Symptom Magnification categories. AR 452. Plaintiff had a coefficient of variance score that demonstrated "submaximal effort," and a spinal function test score "FAR BELOW what would be 'unemployable level.'" *Id.* While at his appointment, Plaintiff appeared to be very disabled—unable to sit upright, lift his legs, stand or even transfer himself. AR 452. Yet as Plaintiff left the clinic, another therapist observed Plaintiff performing an unassisted

standing pivot transfer from a wheelchair into the driver's seat of his SUV. "He required no [assistance] to enter the vehicle or manage lifting his legs." AR 450. He also drove the car away from the clinic.

In addition to the physical therapist's report, the ALJ also found that the Cooperative Disability Investigation Unit's ("CDIU") 2001 report undermined Plaintiff's credibility. In February 2001, a time when Plaintiff was reporting to his medical providers he could not walk or drive, CDIU investigators observed Plaintiff walking, driving, using stairs, and grocery shopping without any difficulty. AR 60. An ALJ may discredit a claimant's allegations that are inconsistent with his reported daily activities. *Lingenfelter*, 504 F.3d at 1040. Both the therapist's report and the CDIU report are specific, clear, and convincing reasons to discount Plaintiff's credibility.

Plaintiff argues the ALJ incorrectly relied upon both the therapist's report and CDIU report. Plaintiff argues the reports are "observations of lay investigators whose report we only have reference to via the prior [ALJ's] decision and the opinion. . . ." Pl.'s Br. at 19. Plaintiff also argues in his Reply Brief that the CDIU reports and report from Mr. Blehm were remote to Plaintiff's onset date. Yet, as the ALJ properly noted, credibility determinations are not confined to events or representations within the relevant period. An ALJ may take events outside the relevant period into account to evaluate Plaintiff's credibility, as they are "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284. In this instance, the ALJ's determination that Plaintiff had been shown in the past to exaggerate his symptoms and limitations is supported by substantial evidence in the record and is a valid reason to discount Plaintiff's credibility.

### 2. Plaintiff's Statements to Treating Physician

Plaintiff argues that his symptoms progressed after the previous adjudication and before the last date insured. The ALJ found this argument inconsistent with Plaintiff's statements to his treating physician Dr. Jordi Kellogg. AR 23, 25.

During a medical examination performed on June 6, 2007, Plaintiff informed Dr. Kellogg that he began experiencing symptoms that included lower back pain, neck pain, and bilateral lower extremity radiculopathy after the relevant period of review. AR 288. Dr. Kellogg's records show that Plaintiff told Dr. Kellogg that the symptoms of which he was complaining developed after a serious motor vehicle accident that took place on March 14, 2007, three months after the date last insured. Plaintiff also told Dr. Kellogg that he had a history of low back injury, "but in the five years prior to this [motor vehicle] accident [Plaintiff] had been doing better." *Id.* The ALJ found these statements "highly inconsistent" with Plaintiff's testimony that his symptoms of pain and lower extremity radiculopathy increased in 2005 and 2006. AR 25. The ALJ's finding of inconsistency is a reasonable interpretation of the evidence.

### 3. Inconsistent with and not supported by medical records

The ALJ also found that Plaintiff's "[m]edical records from October 30, 2004 through December 31, 2006, do not show any significant worsening of the claimant's impairments or symptoms from the previously adjudicated period." Plaintiff maintains his physical condition steadily degraded between 2004 and his date last insured. Plaintiff points to a medical report from May 2011 that states Plaintiff was "told to put off surgery as long as possible. He apparently took this advice very seriously and has deteriorated considerably over the years." AR 666. While it is possible the medical staff in 2011 was specifically referring to deterioration between October 2004 and December 2006, it is also possible they were referring to deterioration either earlier, during the previous adjudication, or later, within the four and a half

years that had passed since the date last insured. Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch*, 400 F.3d at 679 (9th Cir. 2005). It is rational to interpret the 2011 use of the phrase "over the years" as referring to the time period after the date last insured, and this evidence does not render the ALJ's conclusion unsupported.

Plaintiff also points to a May 18, 2012, questionnaire drafted by Plaintiff's attorney with short responses by Dr. Kellogg to support Plaintiff's argument that his symptoms worsened in 2005 and 2006. The questionnaire provided by Plaintiff's attorney to Dr. Kellogg, however, is also susceptible to more than one interpretation.[3] AR 11. Dr. Kellogg agrees that a February 2007 MRI of Plaintiff's back (taken after his auto accident) shows deterioration compared to a December 2000 MRI; however, Dr. Kellogg did not render an opinion as to at what point between 2000 and 2007 the lumbar condition worsened. Dr. Kellogg does not specify whether Plaintiff's condition steadily degraded between 2004 and his date last insured or whether the condition suddenly worsened as a result of the automobile accident. Notably, Dr. Kellogg refused to opine that "the femoral narrowing present in the 2/15/07 lumbar MRI existed at the same level of severity as of 12/31/06, despite the car accident on 2/15/07." AR 11. The doctor first wrote "yes," then struck it out and noted it would be "[d]ifficult to comment" without having considered the change in reported symptoms and comparing imaging before and after the accident.

_____

[3] Dr. Kellogg completed this questionnaire one month after the ALJ issued his decision. The Appeals Council, following Plaintiff's request for review of the ALJ's decision, considered the statement and found it did not provide a basis for changing the ALJ's decision. AR 1-2, 4. This evidence nonetheless became part of the administrative record that the Court considers in determining whether the Commissioner's decision is supported by substantial evidence. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

One interpretation of this evidence might be to infer that Plaintiff's condition deteriorated from the previous adjudication to the date of the MRI. The ALJ concluded, however, that Plaintiff's statements regarding symptoms arising after the March 2007 motor vehicle accident and that he was "doing better" from 2002-2007 do not support such an interpretation. This is a rational interpretation of the evidence. Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson*, 359 F.3d at 1193.

### 4. Failure to Seek Treatment

Lack of treatment is a valid reason to discredit Plaintiff's testimony regarding pain and other symptoms. *Burch*, 400 F.3d at 681 ("ALJ is permitted to consider lack of treatment in his credibility determination."); *see also Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) (upholding adverse credibility finding where claimant failed to report symptoms). Plaintiff testified that during the relevant period he experienced debilitating back pain that prevented him from standing, walking more than a few steps, driving motor vehicles in "any form" or "just being able to function most of the days." AR 22, 41. The ALJ found that medical records from October 30, 2004 through December 31, 2006, indicate Plaintiff "did not receive any regular medical care for either his back or mental health symptoms." AR 26, 23, 310-11. The ALJ found Plaintiff's lack of treatment "highly inconsistent with [his] allegations that he could not walk or stand or any significant amount of time due to pain or radiculopathy." AR 26.

Plaintiff argues he sought treatment for mental health complaints between October 2004 and his date last insured. Plaintiff cites to pages 310 and 311 from the administrative record to support this proposition. After review, the Court finds these pages in fact support the Commissioner's argument. According to the record, the only treatment sought by Plaintiff during the relevant period was for an acute upper respiratory infection in March 2005 and for dental

PAGE 14 – OPINION AND ORDER

care in June and October 2006. AR 310-11.Notably, when Plaintiff received those treatments, he failed to mention his alleged totally incapacitating back problems. VA reports do not indicate Plaintiff sought care for back pain or mobility problems until March 1, 2010, more than three years after the end of the relevant period. AR 309.

Plaintiff also notes that he believed treatment to his back would not improve his condition and that surgery should be avoided as long as possible. This assertion is contained in the record. Plaintiff alleges, however, that his back condition during the relevant period prevented him from "being able to function most of his days." It was, therefore, reasonable for the ALJ to discredit Plaintiff's testimony based on a failure to report symptoms or seek treatment during this time.

### 5.  Noncompliance With Providers' Recommendations and Prescriptions

Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1147-48 (9th Cir. 2001) (approving noncompliance with treatment as reason for disbelieving a claimant); *see also* 20 C.F.R. § 416.930(b) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work"). Plaintiff disputes the ALJ's finding that he was noncompliant with treatment. Plaintiff notes that because he could not take all of his prescriptions without feeling "like a zombie," he did not take "all" of his medications, but that he took most of them. He also explains that, although he missed a few appointments, he made up two of them.

On April 2, 2002, Dr. Smith wrote that Plaintiff has "not followed through with PTSD symptoms management classes" and "has not filled any medications at our pharmacy [in a month and a half]." AR 426. In response to Plaintiff's explanation that he attended two unscheduled appointments to make up for his missed appointments, the record shows that rather than attending an unscheduled appointment to follow through with PTSD management classes or obtain psychiatric care, Plaintiff in fact visited the VA asking if he could get the wheelchair that was delayed due to inconsistencies in Plaintiff's functional presentation. AR 446. Given that the ALJ may use "ordinary techniques of credibility evaluation," *Smolen*, 80 F.3d at 1284, discrediting the Plaintiff's symptoms based on noncompliance with treatment was supported by substantial evidence.

**B.  VA Disability Rating**

Plaintiff argues that the ALJ improperly discredited the VA disability rating. A determination by another governmental agency about whether a claimant is disabled is based on that agency's rules and such determination is not binding on the Commissioner. 20 C.F.R. § 404.1504. An ALJ must, however, "ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (reversing a denial of benefits because the ALJ "failed to consider the VA finding and did not mention it in his opinion"). Because the VA and SSA criteria for determining disability are not identical, an ALJ may "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* Unlike the ALJ in *McCartey*, the ALJ here considered, but rejected, the VA's disability finding. Thus, the Court must decide whether the ALJ provided persuasive, specific, and valid reasons for rejecting the VA's disability finding.

On August 30, 2005, during the relevant period, the VA informed Plaintiff that he would begin receiving disability compensation at the 100 percent rate. AR 241. The ALJ gave "little weight" to the VA disability rating because the VA rating specialist relied on the VA "medical evaluations" of July 24, 2001, by Doyle W. Kelley, and May 17, 2002, by Alan Albright, which relied on Plaintiff's subjective complaints and did not consider Plaintiff's tendency for symptom exaggeration or malingering. The ALJ disagreed with the decision by Karen Baker, the VA rating specialist, to rely on the VA evaluations instead of other evidence in the record. The ALJ also found that the VA determination was inconsistent with the record as a whole, particularly the CDIU investigative report showing that Plaintiff was engaging in activities contrary to his allegations of incapacitating symptoms.

Plaintiff argues the CDIU report was four years old by the time of the VA disability rating, so the VA appropriately gave it little weight. Plaintiff also argues that Dr. Fines, Plaintiff's treating physician, was aware of and considered the allegations of Plaintiff's malingering. These arguments are unavailing.

The CDIU report was from 2001, which is contemporaneous with the 2001 and 2002 VA medical evaluations that Ms. Baker relied on in reaching her VA disability determination. Thus, the ALJ properly considered the persuasiveness of the CDIU report as compared to the persuasiveness of the 2001 and 2002 VA medical evaluations. With respect to Plaintiff's argument that Dr. Fines considered Plaintiff's alleged malingering, this is irrelevant because Ms. Baker did not rely on the reports or records of Dr. Fines in her decision to discount the CDIU report.

An ALJ need not recite certain "magic words" to reject opinions. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Here, the ALJ provided specific and valid reasons to reject the

VA's rating and did not err in giving the VA rating little weight. *See Wagner v. Barnhart*, 154 Fed. App'x. 677, 678 (9th Cir. 2005) ("The ALJ gave appropriate weight to the 100% disability rating by the Department of Veterans Affairs (VA), even though the ALJ rejected it, because the ALJ concluded that the VA rating was based on Wagner's subjective reports of his symptoms and because the VA rating was not consistent with the medical record as a whole.")

## C.  Evaluation of the Medical Evidence

Plaintiff argues that the ALJ improperly weighed the medical evidence. Specifically, Plaintiff argues that the ALJ should have deferred to Plaintiff's treating physicians instead of giving "great weight" to the non-examining medical professionals. The Commissioner responds by arguing that the ALJ "need not discuss all evidence" and must only "explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The opinions of three treating physicians are at issue: Dr. Lenore Fines, Dr. Susan Smith, and Dr. Jordi Kellogg.

### 1.  Dr. Lenore Fines

On June 7, 2010, treating physician Dr. Fines included the following comment in a treatment report: "[Plaintiff] states he is applying for [Social Security] disability and needs statement from me that he has been disabled back to 2000. Reviewed my notes and provided him [with] note." AR 355. In the note at issue, Dr. Fines made the following statement:

> [Plaintiff] is a patient at the VA Medical Center in Portland[,] Oregon. He has a diagnosis of spondylolisthesis. I have taken care of him intermittently since 1997. When I saw him in 2000 he stated he had had 25 jobs in the past 3 [years], having to take many days off because of back pain. He was ending up in bed for 3-4 days each month. Back hurts daily. He has not been employed since 1999. I support his application for social security disability.

AR 353. Plaintiff contends that the ALJ erred in not discussing this statement. The Commissioner responds the ALJ was not required to discuss this statement because this

statement was neither a medical opinion nor significant probative evidence. The Commissioner cites to 20 C.F.R. § 404.1527(a)(2), which defines "medical opinions" as statements from physicians that "reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." The Commissioner contends that Dr. Fines's statement was merely recounting Plaintiff's self-reported symptoms that the ALJ had properly discredited, and therefore the statement was of little probative value.

Regarding the issue of whether Dr. Fines's statement is a medical opinion, the Court finds that Dr. Fines's statement that Plaintiff "has a diagnosis of spondylolisthesis" is a medical opinion. The remaining statements in the note, however, merely repeat what Plaintiff has told Dr. Fines. Additionally, this note does not opine as to any limitations or restrictions that Dr. Fines believes result from Plaintiff's medical conditions. Dr. Fines comments that she "supports" Plaintiff's social security disability application, but general "support" does not translate into any specific functional limitation. Ms. Fines's noted, therefore, does not provide any significant probative evidence. Accordingly, the ALJ did not err in failing to address this comment by Dr. Fines. *Vincent*, 739 F.2d at 1395.

**2. Dr. Susan Smith**

Plaintiff argues the ALJ erred by not providing clear and convincing reasons for rejecting the opinion of Dr. Smith. In February 2001, before the relevant period, Dr. Smith wrote that she "believe[s] [Plaintiff] is totally disabled, will remain so for the next 12 months and is likely to remain so permanently." AR 469.

The ALJ gave Dr. Smith's statement "no weight" because the previous ALJ considered it in his October 2004 decision. Res judicata and collateral estoppel apply where the Commissioner has made a previous final decision based "on the same facts and on the same issue or issues."

PAGE 19 – OPINION AND ORDER

*Nursement v. Astrue*, 477 F. App'x 453, 454 (9th Cir. 2012) (citing 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1)). A previous ALJ's findings concerning residual functional capacity, education, and work experience cannot be reconsidered by a subsequent judge absent new information not presented to the first judge. *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir.1988). Medical evaluations conducted after a prior adjudication necessarily constitute new and material evidence. *Nursement*, 477 F. App'x at 454. Dr. Smith's statements do not constitute new and material evidence because they were taken into account by the previous ALJ. Thus, the ALJ did not err in giving this statement no weight.

### 3. Dr. Jordi Kellogg

As discussed above, in May 2012, one month after the ALJ issued his opinion, Dr. Kellogg provided brief responses in a questionnaire form drafted by Plaintiff's attorney. Plaintiff argues that the ALJ erred by not providing clear and convincing reasons for rejecting this opinion. Plaintiff misunderstands the relevance of this evidence. The issue is not whether the ALJ provided clear and convincing reasons to reject this evidence, because the ALJ was not presented with this evidence, but whether the addition of this new evidence renders the ALJ's opinion unsupported by substantial evidence in the record.

District courts must consider additional evidence submitted to the Appeals Council when the Appeals Council considers the new evidence in deciding whether to review a decision of the ALJ. *Brewes*, 682 F.3d at 1163. The new evidence "becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Id.* Here, the Appeals Council considered the report of Dr. Kellogg, and so it becomes part of the record the Court considers when evaluating whether the ALJ's opinion is supported by substantial evidence in the record.

In the questionnaire, Dr. Kellogg opines that as of the February 15, 2007 MRI, Plaintiff's neural foramina narrowing was severe. Dr. Kellogg further notes that is difficult to comment as to whether the same level of neural foramina narrowing was the same level as of December 31, 2006, and that Plaintiff's neural foramina narrowing worsened between December 2000 and February 2007. Dr. Kellogg did not opine as to any specific functional limitations or render an opinion of total disability. Nor does Dr. Kellogg definitively opine as to Plaintiff's neural foramina narrowing before the last insured date. Thus, this evidence does not, considering the record as a whole, change the Court's finding that the ALJ's conclusions are supported by substantial evidence in the record.

**D.  Step Five**

Plaintiff argues that the ALJ, at step five of the sequential evaluation, erred in finding Plaintiff could perform jobs that exist in significant numbers in the national economy. As described above, the Court finds that the ALJ's conclusions are supported by substantial evidence in the record. Accordingly, the ALJ did not err in the hypothetical he presented to the VE or in his conclusion at step five that Plaintiff can perform jobs that exist in significant numbers in the national economy.

## CONCLUSION

The Commissioner's decision that Mr. Sours is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 25th day of September, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 21 – OPINION AND ORDER